UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD DOMINICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 09 C 4643 |
| TOWN OF CICERO; and | ) | |
| LARRY DOMINICK, President of the | ) | |
| Town of Cicero, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on the motion of Defendants Larry Dominick ("Larry") and the Town of Cicero (the "Town") (collectively, "Defendants") for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Defendants' motion is denied.

## BACKGROUND[1]

Larry Dominick is the President of the Town, a unit of municipal government in Cook County, Illinois. On October 14, 2008, the Trustees for the Town (the "Trustees") adopted, and Larry approved, resolutions which created the Vacant Building Appeals Committee (the "Committee") and empowered Larry to appoint three members to the

---

[1] Unless otherwise noted, the following facts are undisputed for purposes of summary judgment.

Committee. Larry appointed his brother Richard Dominick ("Richard") to the Committee with an annual compensation of $10,599.94 and health benefits. The resolution specified that Richard's appointment would expire on April 30, 2009. Just a few days before the expiration of Richard's appointment, the Trustees adopted, and Larry approved, another resolution extending the appointment from April 30, 2009, to May 31, 2009.

While serving on the Committee, Richard made a statement to CBS Chicago Channel 2 News ("CBS") which was reporting on government waste and corruption. On February 23, 2009, CBS aired the interview in which Richard stated that he worked one hour per month on the Committee in exchange for approximately $1,000 per month and health benefits. Also while serving on the Committee, Richard provided information to the Internal Revenue Service (the "IRS") about the Defendants' allegedly illegal activities.

The parties dispute at what point Larry learned of Richard's cooperation with the IRS. At his deposition, Richard testified that, on or about May 16, 2009, while at his mother's house, he was carrying a piece of mail from the IRS that fell on the ground. Richard testified that Larry read the letter which confirmed that Richard had spoken with the IRS concerning the Defendants' allegedly illegal activities. According to Richard, Larry then confronted him and threatened to "take him down." In contrast, Larry testified at his deposition that he never saw the letter from the IRS in May of 2009

at his mother's house and never spoke to Richard about his discussions with the IRS. Larry claims that he first saw the IRS letter in June or July of 2009, during discovery in this case, but admits that he previously heard a rumor that Richard was cooperating with the IRS.

On May 26, 2009, Larry sent a letter to Richard which stated that Richard's term expired on May 26, 2009, and that he would not be reappointed. Larry testified that he did not reappoint Richard to the Committee because of, among other reasons, Richard's interview with CBS.

On July 31, 2009, Richard filed a two-count complaint against Defendants, alleging that Defendants violated his First Amendment rights under 42 U.S.C. § 1983 and the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1, by terminating his employment with the Town because he provided information to the IRS about the Defendants' allegedly illegal activities. Defendants now move for summary judgment on both of Richard's claims.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 391-92 (7th Cir. 2011). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the

non-moving party. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). A court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

## DISCUSSION

### I. Illinois Whistleblower Act

The Illinois Whistleblower Act (the "IWA") prohibits an employer from retaliating against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation. 740 Ill. Comp. Stat. 174/15(b).

Defendants argue that this Court should grant summary judgment on the IWA claim because Richard does not qualify as an employee under the statute. In particular, Defendants claim that Richard was an officer and not an employee of the Town. The IWA defines "employee" as "any individual who is employed on a full-time, part-time, or contractual basis by an employer." 740 Ill. Comp. Stat. 174/5. If the terms of a statute are unambiguous, the court interprets the statute by its plain meaning. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). The IWA's definition of "employee" unambiguously includes individuals employed on a contractual basis and does not exclude officers. The Town[2] employed Richard on a contractual basis when Defendants

---

[2] A unit of local government, such as the Town, is included within the IWA's definition of employer. 740 Ill. Comp. Stat. 174/5.

appointed him to a specified term on the Committee. Accordingly, Richard qualifies as an employee of the Town under the IWA.

Defendants also argue that this Court should grant summary judgment on the IWA claim because Defendants did not retaliate against Richard by terminating his position on the Committee, but instead merely declined to reappoint him. Defendants' argument fails for two reasons. First, based on the undisputed facts, Defendants did prematurely terminate Richard from his position on May 26, 2009, several days before his term was set to expire on May 31, 2009. Second, the undisputed facts reveal two potential retaliatory actions under the IWA: Defendants' premature termination of Richard and Defendants' decision not to reappoint Richard. The parties did not address whether Richard's premature termination qualifies as retaliation under the IWA and the court need not resolve the issue at this time. The parties did, however, debate whether Defendants' decision not to reappoint Richard qualifies as retaliation under the IWA.[3] Although not expressly defined, the IWA sheds light on the meaning of retaliation. The

---

[3] Defendants compare Richard's IWA claim to a retaliatory discharge claim. The tort of retaliatory discharge only encompasses an employer's actual discharge of the employee and does not encompass the failure to rehire. *Bajalo v. Northwestern Univ.*, 860 N.E.2d 556, 563 (Ill. App. Ct. 2006); *Krum v. Chi. Nat'l League Ball Club, Inc.*, 851 N.E.2d 621, 625 (Ill. App. Ct. 2006). Defendants ask the Court to apply this same principle to Richard's IWA claim. That principal, however, is not applicable to Richard's IWA claim because the IWA prohibits retaliation, which encompasses much more than the termination of employment. *See* 740 Ill Comp. Stat. 174/15 (prohibiting retaliation, not simply termination of employment); *Stiles v. Int'l BioResources, LLC*, 726 F. Supp. 2d 944, 950-51 (N.D. Ill. 2010) (explaining that the IWA and the common law of retaliatory discharge overlap, but the IWA prohibits retaliation, which is a class of activity broader than the termination of employment covered by retaliatory discharge law).

IWA's catch-all provision states that "[a]ny other act or omission not otherwise specifically set forth in [the IWA] . . . also constitutes retaliation . . . if the act or omission would be materially adverse to a reasonable employee." 740 Ill. Comp. Stat. 20.1. Put differently, retaliation encompasses any act or omission by the employer that is materially adverse to a reasonable employee.[4] We find that the failure to reappoint an employee is a materially adverse action because, like a termination of employment, the act deprives the individual of future employment. Thus, the failure to reappoint qualifies as retaliation under the IWA. For the reasons stated above, this Court denies Defendants' motion for summary judgment on the IWA claim.

## II.   The Civil Rights Act, 42 U.S.C. § 1983

The First Amendment prohibits a public employer from retaliating against an employee for engaging in protected speech. *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011). To establish a prima facie case of First Amendment retaliation, a plaintiff must present evidence that: (1) his speech was constitutionally protected; (2) he suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating

---

[4] Although the Title VII statute differs from the IWA, Title VII similarly prohibits adverse employment actions and courts have found that the failure to rehire or reappoint constitutes an adverse employment action under Title VII. *See, e.g., Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 644 (7th Cir. 2006) (finding that plaintiff suffered adverse employment action when he was not reappointed as a professor); *Green v. E. Aurora Sch. Dist. No. 131*, 2009 WL 310913, at *4 (N.D. Ill. Feb. 5, 2009) (noting that plaintiff suffered an adverse employment action when he was not reappointed to a coaching position).

factor in the employer's action. *Id.* at 378-79. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant satisfies his burden, the plaintiff must then demonstrate that the defendant's proffered reason for the decision was pretextual and that retaliatory animus was the real reason for the decision. *Id.*

Defendants argue that this Court should grant summary judgment on Richard's First Amendment retaliation claim because he cannot establish that his speech was a motivating factor in the employer's action. Richard testified that Defendants did not reappoint him to the Committee because Larry learned, on May 16, 2009, that Richard was providing information to the IRS about Defendants' allegedly illegal activities. According to Larry, he had no knowledge of Richard's cooperation with the IRS until June or July of 2009, so that Richard's cooperation with the IRS could not have been a motivating factor in Defendants' decision not to reappoint him in May of 2009.[5] Larry further testified that he did not reappoint Richard to the Committee because of, among other reasons, Richard's interview with CBS during which Richard stated that he received $1,000 a month for one hour of work. Both parties offer their testimony to demonstrate whether or not Larry learned of Richard's cooperation with the IRS shortly

---

[5] Larry partially contradicted this testimony by stating that he had previously heard a rumor that Richard was cooperating with the IRS. The record is unclear regarding precisely when Larry heard the rumor.

before deciding not to reappoint Richard to the Committee. The Court cannot evaluate the credibility of the witnesses. *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 632 (7th Cir. 2009) (noting that the jury resolves credibility issues and the court does not assess the persuasiveness of testimony). Accordingly, summary judgment is inappropriate.

Defendants further argue that even if Richard establishes a prima facie case of First Amendment retaliation, Defendants had a legitimate, non-discriminatory reason for not reappointing Richard. In particular, Defendants state that, regardless of Richard's cooperation with the IRS, they would not have reappointed Richard because of his interview with CBS. Since Richard's interview with CBS painted Defendants in a negative light, Defendants set forth a legitimate, non-discriminatory reason for not reappointing Richard. Richard responds that Defendants' proffered reason is pretextual given that Defendants waited three months after the CBS interview aired to notify Richard of their decision not to reappoint him. Richard offers enough evidence to withstand summary judgment. *Zellner*, 639 F.3d at 379 (explaining that, at the summary judgment stage, plaintiff must produce evidence upon which a rational trier of fact could infer that the defendant's proffered reason is a lie). Accordingly, this Court denies Defendants' motion for summary judgment on the First Amendment retaliation claim.

## CONCLUSION

For the foregoing reasons, this Court denies Defendants' motion for summary judgment.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated: August 3, 2011